UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

IBRAHIMA DIALLO,

    *Plaintiff,*

  -*against*-

NEW YORK CITY POLICE DEPARTMENT, a municipal entity; 1–10 NEW YORK CITY POLICE OFFICERS "JOHN DOES", each of the identified and the non–identified persons in his individual capacity and in his official capacity; COUNTY OF WESTCHESTER, a municipal entity; WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY, a municipal entity; 1–10 WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY POLICE OFFICERS "JOHN DOES", each of the identified and the non–identified persons in his individual capacity and in his official capacity WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS, a municipal entity; WESTCHESTER MEDICAL CENTER, a municipal entity.

    *Defendants.*

-------------------------------------------------------------------X

1:23 Civ. 1238 (PAC)

**OPINION & ORDER**

On October 19, 2021, Plaintiff Ibrahima Diallo was arrested on charges of First and Second degree Robbery and Third degree Grand Larceny. He was jailed for eight days before being released on bail. He alleges that during his confinement, he was denied proper medical care for his tuberculosis of the spine, subjected to full body cavity searches, kept in a cold, isolated cell, and denied a prayer mat. Nearly a year after this ordeal, all charges against Diallo were dropped. Diallo now sues various agencies of the City of New York and Westchester County for violations

1

of his rights pursuant to 42 U.S.C. § 1983 and for analogous state law claims.[1]

Presently before the Court are Defendants' separate motions to dismiss Diallo's Complaint in its entirety. *See* Westchester Medical Center Mot. J. Pleadings, ECF No. 41; County Defs.' Mot. Dismiss ("Cnty Mot."), ECF No. 44; City Defs.' Mot. Dismiss ("City Mot."), ECF No. 59. For the reasons that follow, the Court **GRANTS** Defendants' motions to dismiss Diallo's claims brought under federal law. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice to renewal in a state court of competent jurisdiction.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, ECF No. 10, and are taken as true for the purpose of resolving the instant motions. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff, Ibrahima Diallo, is a Guinean man who has been living in the United States as a political asylee since 2010. Compl. ¶¶ 1, 14. At the time of his arrest, he resided in the Bronx and worked as a handyman and dishwasher. *Id.* ¶¶ 7, 17, 21. He enjoyed an ordinary and peaceful life in which he had no criminal record, never committed a crime, and sought to better himself by

---

[1] Specifically, Diallo sues the New York City Police Department ("NYPD") and NYPD Doe Officers 1–10 (collectively, the "City Defendants") for malicious prosecution (Count I), defamation (Count II), national origin discrimination (Count IV), intentional infliction of emotional distress (Count V), aiding and abetting (Count VIII), and for injunctive relief (Count X). Diallo sues the County of Westchester, the Westchester Department of Public Safety ("WDPS"), WDPS Doe Officers 1–10, and the Westchester County Department of Correction ("DOC") (collectively, the "County Defendants") for malicious prosecution (Count I), false imprisonment/false arrest (Count III), national origin discrimination (Count IV), intentional infliction of emotional distress (Count V), federal and state constitutional violations (Count VII), conversion/replevin (Count IX), and for injunctive relief (Count X). Finally, Diallo sues Westchester Medical Center for intentional infliction of emotional distress (Count V) and medical malpractice (Count VI).

getting an education. *Id.* ¶ 23.

On February 18, 2018, a robbery occurred outside a home in Yonkers, New York. *See id.* at Ex. 1, 4; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). At approximately 4:30 AM, Richard Ferreras and his friend, Rosa, returned home from a concert. *Id.* at 5. As they approached their home, three men ran up from behind. One of the males, later identified as Musa Krubally, pushed Rosa to the ground, while another stated he had a gun. *Id.* The three assailants stole a designer bag, a gold Cuban link chain, and an expensive watch before retreating to their getaway car. *Id.* As the robbers drove off, Rosa noticed their car had a New Jersey temporary plate labeled 060293R. *Id.* The whole encounter lasted only moments. *Id.* The victims contacted the police and indicated that they "may possibly be able to identify one of the suspects." *Id.* at 6.

In March of 2018, a month after the robbery, the New York Police Department ("NYPD") contacted the Yonkers Detectives advising them that there had been similar robberies involving a vehicle with various temporary New Jersey tags. *Id.* The NYPD sent the Yonkers Detectives several images of suspects from the NYPD investigation. *Id.* Based on this information, Yonkers Detectives prepared a photo array which contained an image of the Plaintiff, Ibrahima Diallo. *Id.* Thereafter, Rosa appeared at the Yonkers Detective Division and viewed several double-blind photo arrays. *Id.* He identified Plaintiff as the man "who threatened that he had a gun," and identified Krubally as the person who took his property. *Id.*

On November 30, 2018, "the People presented relevant and legally sufficient evidence of the above crimes to the grand jury, and a true bill was voted against defendant." *Id.* On December 4, 2018, an indictment was filed, and an arrest warrant was obtained for Plaintiff. *Id.* Co-defendant Krubally was arrested on unrelated charges and subsequently pled guilty to a reduced count of

3

Attempted Robbery in the First Degree. *Id.* at 3–4. Several years later, on October 19, 2021, the indictment warrant for Plaintiff was executed. *Id.* at 4.

Plaintiff avers that his "arrest was brutal." Compl. ¶ 93. Police from the Westchester Department of Public Safety and NYPD appeared at Mr. Diallo's apartment around 6:00 AM. *Id.* ¶ 94. During his arrest, he informed the officers that he suffers from tuberculosis of the spine. *Id.* ¶¶ 95–96. Nonetheless, the police "bent, squeezed, and shoved Mr. Diallo such that Mr. Diallo's spine curved to where he lost feeling in his lower body and his extremities." *Id.* ¶ 97.

His experience in jail was no better. *Id.* ¶ 99. Upon arriving to jail, he was subjected to a strip search and isolated in a cell because the Westchester Department of Corrections ("WDC") incorrectly believed that tuberculosis of the spine was contagious. *Id.* ¶¶ 101–02. His cell was too cold, which caused his condition to worsen. *Id.* ¶ 108. On another occasion, he was denied a mat so that he could pray in accordance with his Muslim faith. *Id.* ¶ 176. He also claims that the medical treatment he received was inadequate. Soon after arriving at jail, he was seen by Westchester Medical Center ("WMC"), which he claims, "refused to allow him to take his medication in the proper dosage." *Id.* ¶ 109. Plaintiff claims that because he was denied proper medical treatment, he "suffered an extraordinary amount of pain while confined." *Id.* ¶ 119. All told, he was jailed for eight days until he was released on bail on October 28, 2021. *Id.* ¶ 12.

Roughly one year after being released, on October 12, 2022, the District Attorney's Office submitted an Affirmation in Support of Motion to Dismiss the Indictment. Ex. 1 at 3. The People explained that due to "the quality of the evidence and due to the passage of time since the incident, there is a legal impediment to defendant Ibrahima Diallo's conviction." *Id.* at 8. On October 13, 2022, the action against him was dismissed. *Id.* at 2.

4

## DISCUSSION

### I. Legal Standard

To defeat a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For now, the task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

### II. Federal Law Claims

Diallo brings federal claims under 42 U.S.C. § 1983 for: malicious prosecution (Count I), defamation (Count II); false arrest/imprisonment (Count III), national origin discrimination (Count IV), violation of the First Amendment (Count VII), and for injunctive relief (Count X). His claim for malicious prosecution asserts both individual liability (against WCDPS Does and NYPD Does) and municipal liability under *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978). All of Plaintiff's remaining federal claims seek only municipal liability under *Monell*. For the reasons that follow, Defendants motions to dismiss the federal law claims are **GRANTED**.

### A. Proper Parties

Before reaching the merits of Plaintiff's claims, the Court addresses the preliminary question of whether Diallo has sued the appropriate parties. Both the City and County Defendants assert that Diallo has sued non-suable entities. *See* County Defs.' Mem. Law Supp. Mot. Dismiss ("Cnty Mem.") 15, ECF No. 46; City Defs.' Mem. Law Supp. Mot. Dismiss ("City Mem.") 4, ECF No. 60. Defendants are correct. Under New York law, municipal agencies do not have the capacity to be sued. *Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."). Further, under the New York City Charter "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396.

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court finds that the appropriate remedy is to construe the Complaint against the proper parties. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."). Accordingly, the Court substitutes Westchester County for all claims against WDPS and the Westchester DOC. The Court substitutes the City of New York for all claims against the NYPD. WDPS, Westchester DOC, and the NYPD are all dismissed from the action. With this preliminary matter decided, the Court now turns to the merits of Plaintiff's claim.

### B. Individual and Municipal Liability Under § 1983

Section 1983 imposes civil liability on any party who, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

6

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To assert a cognizable § 1983 claim, the plaintiff must allege "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). "The fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

"Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable." *Askins v Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Accordingly, the Court turns first to the question of whether Plaintiff has plausibly alleged a federal law tort. Only where Plaintiff has plausibly alleged the commission of a federal tort will the Court consider whether such action was taken pursuant to an official policy or custom sufficient to establish municipal liability pursuant to *Monell*.

### C. Discussion

*1) False Arrest/False Imprisonment*

Plaintiff sues the County Defendants on a theory of municipal liability for false imprisonment and false arrest, claiming that Diallo's arrest was unsupported by probable cause. Plaintiff brings these claims in tandem, and the Court considers them accordingly. *See Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) ("[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion.").

"To state a Section 1983 false arrest claim, a plaintiff must allege 'that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 647 (S.D.N.Y. 2021) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam)).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quotation omitted). "[A]n indictment by a grand jury creates a rebuttable presumption of the existence of probable cause." *Grier v. City of Mount Vernon*, No. 16 Civ. 5146, 2019 WL 1171760, at *4 (S.D.N.Y. Mar. 13, 2019). "That presumption may be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quotation omitted); *see also Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) ("Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable

8

cause created by the indictment may be overcome." (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)). The presumption of probable cause "is founded upon the premise that the Grand Jury acts judicially and it may be presumed that it has acted regularly." *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983).

Here, Plaintiff was arrested pursuant to a warrant after an indictment was filed, Ex. 1 at 6, giving rise to the presumption that Diallo's arrest was supported by probable cause. To rebut this presumption, Plaintiff claims that Defendants lacked probable cause because they did not find the stolen items with Mr. Diallo, his car was not used in the robbery, he did not know Mr. Krubally, he had no criminal record, and because he had never been to Yonkers. Compl. ¶¶ 48–56, 87. Plaintiff also points to various weaknesses in the State's case as provided in the District Attorney's Affirmation in Support of Motion to Dismiss the Indictment, such as the fact that the assailants were never described as having accents, while Mr. Diallo speaks with a strong French-Guinean accent and stutters. Pl.'s Opp'n Cnty Defs. 11, ECF No. 50.

These allegations fall well short of demonstrating that the indictment was "procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Grier*, 2019 WL 1171760, at *4. In sum and substance, Plaintiff merely asserts that Defendants had a weak case. He makes no allegations that the police intentionally withheld information, made any misrepresentations, or otherwise acted "to corrupt[] the truth-seeking function of the trial process." *Manganiello*, 612 F.3d at 162. A plaintiff may not rebut the presumption of probable cause "with mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). Because he has failed to allege facts

9

sufficient to rebut the presumption of probable cause, Defendant's motion to dismiss the claim is **GRANTED**.

### 2) Malicious Prosecution

Plaintiff sues both the City and County Defendants for malicious prosecution. As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution . . . and indictment by a grand jury creates a presumption of probable cause" which can only be rebutted by "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 160–61 (citation omitted). As set out above, because Plaintiff has failed to allege facts that rebut the presumption of probable cause, Defendants' motions to dismiss the claim are **GRANTED**.

### 3) Defamation

Plaintiff sues the City Defendants for defamation.[2] Compl. ¶¶ 138–45. Plaintiff claims that the NYPD defamed Diallo by providing pictures of him to Westchester County as part of the robbery investigation. *Id.* ¶ 139. However, neither party discusses the defamation claim in any detail. Because the City "moves to dismiss the Complaint in its entirety," City Mem. 2, and because Plaintiff does not defend this theory, the Court deems it waived. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 655 (S.D.N.Y. 2018) ("[B]ecause Defendant clearly styles its motion as a motion to dismiss all municipal liability claims, and because Plaintiff does not defend this theory, the Court deems it waived." (internal citation omitted)). Accordingly, Defendants' motion to dismiss the defamation claim is **GRANTED**.

---

[2] Specifically, Count II is for "Defamation—False Light." It is not clear from the allegations whether Plaintiff brings this claim under § 1983 or under state law (or both). For completeness, the Court construes it as a claim for defamation pursuant to § 1983.

10

### *4) National Origin Discrimination*

Plaintiff's fourth cause of action is against both the City and County Defendants for national origin discrimination. Plaintiff claims that he was identified as a suspect simply for being Guinean. Compl. ¶ 152. He claims that had "Mr. Diallo had a different name, like John Smith instead of Ibrahima Diallo, his picture would not have been included in a lineup of a crime he never committed." *Id.* ¶ 153.

Plaintiff's claim of national origin discrimination is construed as a claim for selective law enforcement. Under § 1983, these claims are analyzed under "the Fourteenth Amendment's Equal Protection Clause to be free from impermissible racial or national origin discrimination. *Barua v. City of New York*, No. 14 Civ. 584, 2016 WL 7494875, at *11 (S.D.N.Y. Dec. 29, 2016). "To establish a violation of equal protection based on selective enforcement, Plaintiffs must show: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Case v. City of New York*, 233 F. Supp. 3d 372, 394 (S.D.N.Y. 2017) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). The law requires a comparison with similarly situated individuals because "courts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute." *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001).

Here, aside from the bald assertion that had "Mr. Diallo had a different name, like John Smith instead of Ibrahima Diallo, his picture would not have been included in a lineup of a crime he never committed," the complaint fails to make any comparison to similarly situated individuals who were not prosecuted. As such, Plaintiff's claim must be dismissed. *See Crespo v. Rivera*,

11

No. 16 Civ. 708, 2018 WL 4500868, at *16 (S.D.N.Y. Sept. 19, 2018) (dismissing selective prosecution claim because Plaintiff had not "pled any facts concerning similarly situated comparators"); *Case*, 233 F. Supp. 3d at 395 (dismissing selective prosecution claim because "Plaintiffs fail to cite even one comparative case where Defendants applied a different policy to [similarly situated individuals]").

### 5) First Amendment

Diallo's seventh cause of action alleges that the County Defendants violated his First Amendment right to the free exercise of religion by subjecting him to a strip search and by denying him a prayer mat. Compl. ¶¶ 165–77. "The Free Exercise Clause of the First Amendment states, 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Pena v. Morton*, No. 19 Civ. 7336, 2022 WL 657045, at *3 (S.D.N.Y. Mar. 4, 2022) (quoting U.S Const. amend. I). "Prison inmates are protected by the clause, though not necessarily to the same extent as others." *Id.* "To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (alterations omitted).

"Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). "[C]ourts in this District have consistently rejected claims that standard strip searches violate the First Amendment rights of Muslim inmates whose religion

12

might forbid them from being seen naked by other individuals." *Pizarro v. Bd. of Correction*, No. 16 Civ. 2418, 2018 WL 3462512, at *5 (S.D.N.Y. July 17, 2018).

Here, Plaintiff alleges that he was strip searched upon booking, pursuant to "§ 112.03 of the County of Westchester Department of Public Safety Manual." Compl. ¶ 171. Plaintiff does not allege any facts which suggest the Defendant's search policy lacked a legitimate penological interest. Indeed, Plaintiff concedes that "[i]f Westchester County had probable cause to charge, arrest, and jail him, Westchester County may have a colorable argument on summary judgment as to why that claim cannot continue to trial." Pl.'s Opp'n Cnty Defs. 15 n.1. However, a strip search is constitutional "even in the absence of probable cause." *Jean-Laurent*, 438 F. Supp. 2d at 323. Having asserted no facts that the search served no legitimate penological interest, the County Defendants' motion to dismiss the claim is **GRANTED**. *See Cook v. City of New York*, No. 19 Civ. 3858, 2019 WL 3388909, at *2 (E.D.N.Y. July 26, 2019) (dismissing unconstitutional strip search claim, in part because plaintiff failed to "identify additional circumstances surrounding the strip search at issue that indicate that the search was unrelated to any legitimate penological interest").

Plaintiff also avers that his First Amendment rights were violated because he was deprived of a prayer mat. Compl. ¶ 175–77. Diallo claims that "he asked for a mat or cloth so that he could pray, but no one responded to him for days" and, as a result, he could not pray. *Id.* ¶¶ 176–77. Plaintiff's claim fails because a single instance of interference is insufficient to establish municipal liability pursuant to *Monell*. Plaintiff fails to allege any facts that the denial of his prayer mat was taken pursuant to an official policy or custom. Because a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a

13

municipal policy," *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998), the Country Defendants' motion to dismiss the claim is **GRANTED**.

### 6) *Injunctive Relief*

Plaintiff pursues injunctive relief against both the City and County Defendants pursuant to § 1983. Plaintiff requests that Defendants "remove his profile from their respective criminal data bases." Compl. ¶ 192. In his Opposition, Plaintiff fails to address Defendants' arguments for why such relief should be denied, stating only that "Plaintiff will have sought injunctive relief when he moves for Injunctive Relief." Pl.'s Opp'n City Defs. 14, ECF No. 63. The Court construes this as an indication that Plaintiff has abandoned his prayer for injunctive relief. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim."). Accordingly, Plaintiff's claim for injunctive relief is dismissed.

### III. <ins>State Law Claims</ins>

Having dismissed all of Plaintiff's federal claims, only Plaintiff's state law claims remain. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Cummings v. City of New York*, No. 19 Civ. 7723, 2021 WL 1664421, at *2 (S.D.N.Y. Apr. 28, 2021) ("The Second Circuit takes a particularly strong view that district courts should decline to exercise supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'" (quoting *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006)). Accordingly, the state law claims are dismissed, without prejudice to renewal in the proper state court.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City and County Defendants' motions to dismiss Plaintiff's claims brought under 42 U.S.C. § 1983. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice as to renewal in a state court of competent jurisdiction. This dismissal is without prejudice as leave to amend should be freely given. Fed. R. Civ. P. 15(a). Plaintiff has 30 days in which to file an Amended Complaint consistent with this Order. The Clerk of the Court is respectfully directed to close the motions at ECF Nos. 41, 44, and 59.

Dated: New York, New York
March 19, 2024

SO ORDERED

HONORABLE LORETTA A. PRESKA
United States District Judge